The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Cramer, the records contained in the Commissions file in this matter and the briefs and oral arguments before the Full Commission. The appealing party has shown good ground to reconsider the evidence in this matter. Having reconsidered the evidence, the Full Commission reverses the Deputy Commissioners denial of benefits and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties through the Pre-trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the North Carolina Workers Compensation Act.
2. An employee-employer relationship existed between the deceased Gayle C. Robbins and the Wake County Board of Education, the deceased being employed at Ligon Junior High School between October 1977 and May 1978 and at Devereaux Street from 1978 to 1982.
3. Defendant is self-insured.
4. The deceased employees average weekly wage was $241.15, which provides a compensation rate of $160.77.
5. Gayle C. Robbins died on June 21, 1995.
6. Gayle C. Robbins was survived by her husband, W. Glenn Robbins, Jr., who was not dependent on her and two minor daughters, Mary Robbins, born March 28, 1984 and Katie Robbins, born July 21, 1987, both of whom were wholly dependent on her.
7. The issue before the Commission is whether plaintiff contracted an occupational disease, specifically mesothelioma.
 ***********
Based upon the competent evidence of record and the reasonable inferences flowing therefrom, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. In 1993, Gayle Collier Robbins was diagnosed with mesothelioma, a cancer that is most often associated with exposure to asbestos. She received treatment from Dr. Jeffrey Crawford at Duke University Medical Center, and aggressive surgery from Dr. David Sugarbaker at Brigham and Womens Hospital in Boston, Massachusetts. Gayle Robbins died on June 21, 1995.
2. Gayle Robbins was born on October 28, 1953. When she was an infant, her father worked for Hunt General Tire, performing general tire work and work on brake linings. He later went to work at a Firestone plant, buffing and retreading tires.
3. When decedents father would come home from work, his uniform would be covered with particles of dust from work. Decedent would greet him, and he would pick her up on his shoulders, while still in his dirty uniform. She and her sisters would play in a pile of their fathers dirty uniforms. Sometimes, her mother took her when she went to pick up decedents father at work. They would go into the plant where he was working. The plant contained pipes that ran into the machinery, and these pipes were wrapped with some type of insulation.
4. Decedents estate is involved in a lawsuit in Travis County District Court in Texas, in which it is alleged that Gayle Robbins was exposed to asbestos during her childhood through contact with her fathers dirty work uniforms, and through exposure at his workplace.
5. From around May 1978 to October 1981, decedent worked as a secretary and graphic artist for the Wake County School System. She worked in the central office at 601 Devereaux Street in Raleigh. The central office had been constructed in 1946 as a school and had operated as a school for many years but was later converted to offices for the school system. Her office was on the second floor and was divided from other work areas by partitions that were five and a half or six feet tall and did not go to the ceiling. She worked in that area most of the day and in the print shop next door about two hours per day. Several times a day, Mrs. Robbins would have to go down to the basement to put information in the courier boxes. The boiler room was immediately adjacent to the courier boxes. During the time Mrs. Robbins worked at Devereaux Street, construction was almost always under way there. Mrs. Robbins would come into her office on many days and there would be dust and particles on her desk.
6. During the time that decedent worked at the Devereaux Street building, many schools and buildings including the one where she worked harbored asbestos-containing materials. The insulation, floor tiles, plaster wall and ceiling that was in place during Mrs. Robbins employment were more than likely the original from when the school was built in the 1940s.
7. All schools throughout the United States were required to perform asbestos surveys pursuant to the Asbestos Hazard Emergency Response Act (AHERA). In 1988 a survey was done at the Devereaux Street facility. This study determined that the school was loaded with asbestos. One hundred thousand square feet of ceiling plaster was 10% damaged and in friable condition and contained one percent chrysotile asbestos. This damaged friable asbestos was in the air plenum and was circulated from the area of damage throughout the remainder of the building. Most of the floor tile throughout the building contained between two and ten percent chrysotile asbestos. Some of the wall plaster contained two percent chrysotile asbestos that was friable and over 50% damaged. There was asbestos insulation in plaster elbows on pipes in the boiler rooms, on felt wrap in the print shop, in the vibration dampers that were part of the heating system of the school which would release asbestos fibers into the air plenum, as well as numerous other locations throughout the facility. The 1988 study was indicative of conditions that existed in the building during the time that decedent worked there.
8. Uncontradicted testimony concerning asbestos exposure was presented by Howard A. Cole, a certified Industrial Hygienist and a licensed asbestos consultant. Cole has had numerous courses in industrial hygiene and courses dealing specifically with asbestos. After obtaining his masters degree from City University of New York in 1980, Cole went to work for OSHA as an Industrial Hygienist and stayed there until 1984. During that time, Cole conducted between 100 and 150 inspections. In 1984, Cole went to work for the U.S. Environmental Protection Agency in Dallas, Texas. At EPA, Cole spent 60 to 70% of his time dealing with "Asbestos in the School program and the "Asbestos Work Protection program. During his four years of employment with EPA, Mr. Cole personally inspected approximately 150 schools and oversaw the reports on another 400-500 schools.
9. In 1988, Cole formed his own consulting company known as Cole-McDonald Environmental Consulting, Inc. During the last eleven years, 60% to 70% of his practice has been involved in asbestos inspections and asbestos abatement project design. Between 1988 and 1992, 60% to 70% of all of these asbestos inspections involved schools. Cole performed a project with the Texas Department of Health overseeing the asbestos management plans of all the schools in Texas. This involved approximately 5,000 asbestos management plans that Cole was required to supervise and he personally reviewed 200-300 management plans. As a result of his extensive knowledge and background, Mr. Cole was moved, without objection, as an expert in the area of industrial hygiene, asbestos rules and regulations and asbestos in the schools. He was eminently qualified to testify as an expert on asbestos exposure in public school buildings. He rendered the opinion, and the Full Commission so finds, that, based upon his knowledge of school construction and school maintenance and based upon the conditions present at the Devereaux Street facility when the 1988 asbestos study was conducted, plaintiff had significant exposure to asbestos during the time she worked in that building.
10. Between Thanksgiving and Christmas of 1992, Mrs. Robbins developed a dry hacking cough. As a result, in January of 1993, she went to her family doctor who thought she might have an infection and treated her with antibiotics. When those antibiotics failed to solve Ms. Robbins cough, she was given stronger antibiotics. These antibiotics also failed to cure Ms. Robbins cough so a chest x-ray was performed. The chest x-ray revealed a suspicious shadow. Thereafter, a CT scan was performed, revealing a tumor about the size of an egg on Ms. Robbins right lung. A needle biopsy was performed but the results were inconclusive. Mrs. Robbins then had a thoracotomy performed at Rex Hospital. At first, the physicians were not sure whether Mrs. Robbins had adenocarcinoma or mesothelioma. The disease was finally and conclusively diagnosed as malignant mesothelioma.
11. On April 28, 1993, Mrs. Robbins had a surgery known as extrapleural pneumonectomy. That surgery involved taking out her entire right lung, taking out one of her ribs, taking her diaphragm out, and taking off the lining around her heart. The surgery was followed by an aggressive treatment of chemotherapy. In spring of 1994, the cancer spread to her brain. Brain surgery was performed to remove the tumor on May 19, 1994. That surgery was followed by twenty radiation treatments. The usual maximum life expectancy for someone with mesothelioma is eighteen months. Due to Mrs. Robbins extremely aggressive treatment, she was able to live a little longer but succumbed to the mesothelioma and died on June 21, 1995.
12. During her four years of employment at Devereaux Street, plaintiff was constantly exposed to more than the "normal amount of asbestos fibers that people in the general population are exposed to as part of their background environment. Her exposure to asbestos particles there was far more than a trivial amount. It also was her last injurious exposure to asbestos and proximately augmented her malignant mesothelioma.
13. Dr. Victor Roggli of Duke University is a board-certified physician in the areas of anatomic and clinical pathology and forensic medicine. His area of specialty is lung pathology with a special emphasis on asbestos and asbestos related diseases. He is the author of three books, and has written twenty-one chapters in other books with twelve of those chapters dealing specifically with asbestos related diseases. He has written 126 full-length papers approximately half of which deal with asbestos related diseases of the lung. In recognition of his high level of expertise in this area, he is a member of the US/Canadian Mesothelioma Panel. "That's a group of ten pathologists who have a special interest in diagnosing the disease mesothelioma, and we represent a referral panel for other pathologists who send us cases either because its a difficult case or because they have too little experience with the disease to be certain of the diagnosis. While on this mesothelioma panel since 1987, Dr. Roggli has examined approximately 900 cases sent to the panel, which equates to about 100 per year. He also reviews "about 350 new cases a year at Duke these days and about half of them roughly are mesothelioma cases.
14. Dr. Roggli was offered and is accepted by the Full Commission as an expert in pathology in asbestos and asbestos related diseases of the lung including mesothelioma. Dr. Roggli concluded, and the Full Commission finds as fact, that Mrs. Robbins had a malignant pleural mesothelioma of the biphasic type.
15. The only medical expert to testify in this case, Dr. Roggli, stated that mesothelioma was a disease characteristic of an individual engaged in a particular trade or occupation, i.e., working in an area where one would be exposed to asbestos. While there is nothing about being a graphics artist or teachers aide that is going to predispose someone or result in an increased risk of developing mesothelioma, if the job is conducted in an environment that happened to have levels of asbestos that are substantially different from background then the job places persons who work there at an increased risk. This is different from the public in general because not all buildings contain friable asbestos. Mrs. Robbins employment at the Devereaux Street facility for the Wake County Board of Education exposed her to greater risk of contracting the disease mesothelioma than the public generally.
16. Mesothelioma is not an ordinary disease of life to which the general public is equally exposed as someone like Mrs. Robbins who has to work in a building that exposes her to asbestos. Mesothelioma is a rare disease and its association with asbestos is so strong that when one identifies a case of mesothelioma, one of the first questions that the physician would ask would be regarding possible exposure to asbestos the patient may have had. And the first thing an industrial hygienist would look at would be to see if there was any asbestos in the workplace or anywhere in the persons environment where he or she may have been exposed.
17. Dr. Roggli rendered the opinion, and the Full Commission finds as fact, any asbestos exposure that plaintiff had while working with defendant would be a significant contributing factor to her disease. The uncontested testimony by Mr. Cole, which the Full Commission finds as fact, was that Mrs. Robbins had a non-trivial exposure to asbestos at the Devereaux Street facility. Dr. Roggli testified, and the Full Commission finds as fact, that a non-trivial exposure to asbestos at Devereaux would have been injurious. Thus the asbestos exposure Mr. Robbins had from her father is of little relevance in this case since Mrs. Robbins last injurious exposure was with the Wake County Board of Education.
18. Mrs. Robbins exposure to asbestos at the Devereaux Street facility was causally connected to her mesothelioma. Mrs. Robbins asbestos exposure while employed by defendant was a significant contributing factor in the development of her mesothelioma.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Decedent was last injuriously exposed to the hazards of asbestos and the resulting mesothelioma while employed by defendant for as much as thirty (30) days, or parts thereof, within seven consecutive calendar months immediately preceding her last exposure in 1982. N.C. Gen. Stat.97-57.
2. As a direct and natural result of her occupational exposure to asbestos, decedent developed mesothelioma which is an occupational disease due to causes and conditions characteristic of and peculiar to her employment and which is not an ordinary disease of life to which the general public was equally exposed. N.C. Gen. Stat. 97-53(13).
3. As a result of decedents mesothelioma, W. Glenn Robbins, Jr., plaintiff and executor of decedents estate, is entitled to be paid by defendant temporary total disability compensation at the rate of $160.77 per week for the period from the date of decedents diagnosis in February of 1993 through the date of her death on June 21, 1995. N.C. Gen. Stat.97-29.
4. As a result of decedents asbestosis, mesothelioma and related death, W. Glenn Robbins, Jr., plaintiff and executor of decedents estate, is entitled to be paid by defendant burial expenses not to exceed $2,000.00. N.C. Gen. Stat. 97-38.
5. Plaintiff, W. Glenn Robbins, Jr., is the widower of decedent and as such is conclusively presumed to have been wholly dependent upon her at the time of her death.
N.C. Gen. Stat. 97-39. Plaintiff W. Glenn Robbins, Jr., is entitled to receive benefits at the rate of $55.59 per week for a period of 400 weeks from the date of decedents death. Mary Robbins is entitled to $55.59 per week from the date of decedents death until the latter to occur: her 18th birthday or 400 weeks after the death of decedent. Katie Robbins is entitled to $55.59 per week from the date of decedents death until her 18th birthday. N.C. Gen. Stat. 97-38.
6. Decedents estate is entitled to have defendants pay for all medical expenses incurred as a result of decedents asbestosis and resulting mesothelioma. N.C. Gen. Stat. 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay temporary total disability compensation to W. Glenn Robbins, Jr., as plaintiff and executor of decedents estate at the rate of $160.77 per week for the period from the date of decedents diagnosis in February of 1993 through the date of her death on June 21, 1995. Having accrued, this compensation shall be paid to W. Glenn Robbins, Jr., in a lump sum, subject to the attorneys fee approved herein.
2. Defendants shall pay to W. Glenn Robbins, Jr., as plaintiff and executor of decedents estate, burial expenses not to exceed $2,000.00.
3. Defendants shall pay W. Glenn Robbins, Jr., as the widower and dependent of decedent, benefits at the rate of $55.59 per week for a period of 400 weeks from the date of decedents death. Defendant shall pay to Mary Robbins the sum of $55.59 per week from the date of decedents death until the latter to occur: her 18th birthday or 400 weeks after the death of decedent. Defendant shall pay to Katie Robbins the sum of $55.59 per week from the date of decedents death until her 18th birthday. Payments to the minor children shall be made to W. Glenn Robbins, Jr., for the use and benefit of the minor children for so long as such minor children remain in the physical and legal custody of W. Glenn Robbins, Jr. With respect to the portions that have accrued, this compensation shall be paid to W. Glenn Robbins, Jr., in a lump sum. This compensation is subject to the attorneys fee approved herein.
4. Defendants shall pay decedents medical expenses, including reimbursement to W. Glenn Robbins, Jr., for such as he has paid either individually or as executor of decedents estate.
5. A reasonable attorneys fee of twenty-five percent (25%) of all compensation awarded herein is approved for counsel for plaintiff. From the amounts having accrued, this fee shall be paid directly to counsel for plaintiff, with counsel for plaintiff receiving every fourth check thereafter.
6. Defendant shall pay the costs.
This 26th day of March 2001.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
 S/_______________ LAURA K. MAVRETIC COMMISSIONER